UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| CAROLE K. GREER, ) | |
| ) | |
| Plaintiff, ) | Case No. 5:05-cv-174 |
| ) | |
| v. ) | Honorable Robert Holmes Bell |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |
| _____ ) | |

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits (DIB). Plaintiff filed the application giving rise to this appeal on November 15, 2000, claiming an onset of disability of August 5, 1996. (A.R. 110-12). Denial of plaintiff's earlier claims for DIB benefits precluded a finding of an onset of disability before May 18, 1999. Plaintiff's disability insured status expired on March 31, 2002.

Plaintiff's claim was denied upon initial review, and as a disability redesign prototype case, was not subject to administrative review at the reconsideration stage. (A.R. 44). On June 20, 2002, plaintiff received a hearing before an Administrative Law Judge (ALJ) Thomas L. Walters. (A.R. 606-29).[1] On August 27, 2002, an ALJ Walters issued an opinion finding that

---

[1] The transcript of the June 20, 2002 hearing before ALJ Walters contains three potentially confusing typographical errors. The cover page, introductory paragraph, and concluding paragraph of the transcript (A.R. 606, 608 and 629) all erroneously indicate that this hearing occurred in 2005. ALJ Walters issued his decision on August 27, 2002, and the first paragraph of his opinion states that he conducted plaintiff's hearing on June 20, 2002. (A.R. 48). The Appeals Council vacated

plaintiff was not disabled. (A.R. 48-55). On May 14, 2004, the Appeals Council issued an order vacating the ALJ's decision because the ALJ's decision had "referenced evidence which did not relate to the claimant." The Appeals Council remanded the case to a different ALJ for further proceedings. (A.R. 95). The Appeals Council's order stated as follows:

> Upon remand, the Administrative Law Judge will reevaluate the evidence of record. In addition, the claimant filed a subsequent application for a period of disability and disability insurance benefits on January 26, 2004, which has been rendered duplicate by the Council's action. The Administrative Law Judge will consolidate the claims files, and issue a new decision on the associated applications.
>
> The Administrative Law Judge will offer the claimant an opportunity for a hearing, and take any further action needed to complete the administrative record.

(A.R. 95). On January 20, 2005, plaintiff received a hearing before ALJ Patricia E. Hartman. Plaintiff was represented by counsel. (A.R. 578-605). On April 11, 2005, ALJ Hartman issued her decision finding that plaintiff was not disabled during the closed period from May 18, 1999, through March 31, 2002. (A.R. 18-27). The Appeals Council denied review on October 14, 2005 (A.R. 9-11), and the ALJ's decision became the Commissioner's final decision. On December 8, 2005, plaintiff filed her complaint in this court seeking review of the Commissioner's decision denying her DIB claim.

Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence. Upon review, I find that the Commissioner's decision is supported by more than substantial evidence, and recommend that the Commissioner's decision be affirmed.

---

Walters's decision and remanded the matter to ALJ Hartman on May 14, 2004. ALJ Hartman issued her decision on April 11, 2005. Obviously, ALJ Walters did not conduct a hearing on plaintiff's claim in June 2005. The typographical errors in the June 20, 2002 transcript have been ignored.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston*, 245 F.3d at 534 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ – would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a

preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## **Discussion**

ALJ Hartman found that plaintiff met the disability insured requirements of the Social Security Act on May 18, 1999, her asserted onset of disability, and continued to meet them through March 31, 2002, but not thereafter.[2] Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. The ALJ found that the medical evidence established during this time period plaintiff had the severe impairment of being "status post cervical laminectomy." The ALJ found that plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. The ALJ determined that plaintiff's subjective complaints were not fully credible:

> The claimant testified that she has constant neck pain and dull headaches. She further testified that she is able to sit for about 1/2 hour. She stated she can lift or carry up to 10 pounds. The claimant testified that she has numbness and tingling in her fingers and hands when she overuses them. She stated that she prepares meals, dusts, mops, vacuums, washes dishes, goes shopping, goes out to eat, and writes checks.
>
> The undersigned has considered whether the claimant's medically determinable impairment could reasonably be expected to cause disabling symptomology and has concluded that they could. However, after careful consideration of the record, the undersigned finds that the claimant's testimony with respect to the extent and severity of her impairments and resulting functional limitations is not fully credible. The claimant stated that she had numbness and tingling in her fingers and hands, but her EMG was normal (Exhibit 52F). The claimant testified she no longer rides motorcycles, but she reported to Dr. Forsythe in 1998 that she enjoyed riding her motorcycle with her husband (Exhibit 20F). The claimant testified that

---

[2] It was plaintiff's burden to submit evidence demonstrating that she was disabled prior to the expiration of her disability insured status. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *see also Wirth v. Commissioner*, 87 F. App'x 478, 479 (6th Cir. 2003).

she was disabled, but when her attorney asked her if she could work as a gate attendant, she stated that she could as long as she was able to recline during normal work breaks.

The undersigned has fully considered the assessments at the state agency level, including Residual Functional Capacity Assessments, DSS Consultation Forms and Psychiatric Review Technique Form, in which the claimant was found not disabled (Exhibits 18F, 21F, 26F, 27F, 39F and 40F). The undersigned concurs with the overall conclusion of these assessments that the claimant is not disabled.

In summary, the medical record establishes the claimant is status post cervical laminectomy. However, the claimant prepares meals, goes out to eat, drives, vacuums, mops, dusts, washes dishes, and goes grocery shopping. On November 14, 1996, plaintiff reported what limited her most was her inability to move her head freely, due to stiffness and pain. She stated it had improved since she stopped wearing her cervical collar (Exhibit 12F). On July 2, 1997, an MRI of the cervical spine revealed no evidence of a disc bulge or herniation (Exhibit 14F). In May, 1998, the claimant reported that she was taking college classes (Exhibit 19F). On April 29, 1999, Dr. Shaikh reported that the claimant had a normal physical examination except for the partial restriction of movements at the cervical spine. Dr. Shaikh noted that the claimant was able to sit, stand, bend, stoop, carry, push, pull, button clothes, tie shoes, dress, undress, dial a telephone, open a door, make a fist, pick up a coin, pick up a pencil, write, squat, arise from squatting, get on and off the examination table, and climb stairs (Exhibit 29F). On October 4, 2001, Dr. Bez reported that the claimant had full flexion and extension of the neck (Exhibit 42F). On November 15, 2001, a CT scan of the cervical spine demonstrated anterior fusion well placed (Exhibit 45F). It had been reported in physical therapy progress notes that the claimant had not been consistent for sessions (Exhibit 47F). On June 17, 2002, Seth Egelston, M.D., the claimant's family physician, reported that the claimant's weakened, de-conditioned muscles needed to be strengthened (Exhibit 50).

On February 16, 1998, Dr. Muzlavovich opined that the claimant should gear her vocational rehabilitation toward a light to sedentary type job assignment (Exhibit 19F). On August 14, 1998, Dr. Rothrock averred that the claimant was capable of some gainful employment (Exhibit 24F). The undersigned finds that these opinions are consistent with the record as a whole and therefore adopts them.

On March 17, 2003, Dr. Hughes opined that the claimant was permanently disabled from any gainful employment (Exhibit 53F). The undersigned notes that this statement is almost one year after the claimant's date last insured of March 31, 2002. Dr. Hughes did not examine the claimant until June 2, 2002, which is already past the claimant's last insured date. The undersigned finds that this opinion is not consistent with the record as reflecting the claimant's condition prior to her last insured date, and therefore rejects it. In addition, the issue of disability is one ultimately reserved for the Commissioner.

> On the basis of the medical summary and foregoing analysis, the undersigned finds the claimant retained the following residual functional capacity through her date last insured of March 31, 2002, for work at the sedentary exertional level. The claimant could do no reaching above shoulders with either upper extremity. She could [] not [perform work requiring her to] bend her head down. The claimant could do no frequent fingering with either hand.

(A.R. 23-24). The ALJ found that plaintiff retained the residual functional capacity (RFC) to perform a limited range of sedentary work. Plaintiff was not capable of performing her past relevant work. Plaintiff was 44 years old as of the date last disability insured. Thus, plaintiff was classified as a younger individual. Plaintiff has a high school education. The ALJ found that the transferability of work skills was not at issue. The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age and with her RFC, education, and work experience, the VE testified that there were approximately 9,000 jobs within Michigan's Lower Peninsula that plaintiff was capable of performing. (A.R. 600-01). The ALJ held that this constituted a significant number of jobs. Using Rule 201.28 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 26).

Plaintiff's six-page brief is devoid of reference to any legal authority. On page 3, plaintiff states, "The issue is essentially the credibility of the claimant." (Plf. Brief at 3, docket # 7). Plaintiff's brief contains four arguments attacking the ALJ's credibility determination: (1) plaintiff's normal EMG referenced by the ALJ was "not a dispositive finding and was never considered as such by the medical practitioners," but that subsequent entries dated after June 10, 2002, are "particularly significant" (*Id.*, 3-4); (2) plaintiff's statements to Dr. Forsythe about riding motorcycles "show nothing more than it was probably correct for the Commissioner to deny the claim in 1999, but cast no light on her condition in 2002 or 2005" (*Id.*, 4); (3) that the ALJ's reference to a question posed by plaintiff's attorney was not apparent in the record (*Id.*); and (4) that the evidence "strongly

supports the claimant's complaint of intractable pain." (*Id.*, 5). Upon review, I find that plaintiff's arguments fail to provide a basis for disturbing the Commissioner's decision.

Plaintiff testified that she experienced numbness and tingling in her hands. (A.R. 590). ALJ Hartman found that this claim was not fully credible, because plaintiff's June 2002 EMG had returned normal results. (A.R. 23). The record shows that on June 10, 2002, B. D. Campbell, M.D., performed an EMG and reported the following findings:

> REPORT: Nerve conduction studies of the left and right median nerves as well as the left and right ulnar nerves show normal distal motor and sensory latencies, segmental velocities and amplitudes. The ulnar and medial F waves are normal bilaterally.
>
> Extensive needle examination of the proximal and distal muscles of the right upper extremity, including the right shoulder girdle muscles, fails to reveal any abnormality.
>
> IMPRESSION: Normal EMG and nerve conduction studies of the right upper extremity with correspondingly normal nerve conduction studies of the left upper extremity.
>
> There is no evidence for entrapment of the left or right median or ulnar nerve and there is no evidence of radiculopathy in C-5 through T-1 innervated muscles on the right at this time.

(A.R. 558). Plaintiff attempts to discount the importance of the EMG by arguing that "the negative EMG was not a dispositive finding and was never considered as such by the medical practitioners." (Plf. Brief, 4). Plaintiff cites no legal authority in support of this proposition. It was clearly appropriate for the ALJ to take objective test results into consideration when determining the credibility of plaintiff's subjective complaints.

Plaintiff argues that "entries after the June 2002 EMG are particularly significant," referencing plaintiff's June 18, 2002 MRI and opinions expressed by Dr. Hughes on August 5, 2002. (Plf. Brief, 3-4). Plaintiff's disability insured status expired on March 31, 2002. W. F. Coughlin, M.D., interpreted plaintiff's June 18, 2002 x-rays. The x-rays showed a "stable appearing two level cervical fusion" at C4 through C6. (A.R. 555). K. Colvin, M.D., interpreted plaintiff's June 18,

2002 MRI as indicating that plaintiff was status post anterior cervical fusion without evident complication. Dr. Colvin observed a C6-7 paracentral disc protrusion resulting in mild to moderate spinal canal narrowing and right neural foraminal narrowing. (A.R. 556). On July 30, 2002, plaintiff underwent a cervical myelogram and post myelogram CT. S. C. Yuill, M.D., found no evidence of disc or neuraforminal stenosis at the C4 to C6 levels. At C6-C7 Dr. Yuill observed a "right sided uncovertebral joint hypertrophy . . . with right neural foraminal stenosis." Dr. Yuill indicated that it was of "a mild degree." (A.R. 573). Dr. Yuill did not offer an opinion that this condition had existed on or before March 31, 2002. On August 5, 2002, five months after plaintiff's disability insured status had expired, Dr. Hughes wrote that plaintiff's July 30, 2002 myelogram and post myelogram CT suggested sufficient changes at the C6-7 level that it "could explain plaintiff's bilateral symptoms." (A.R. 565). The ALJ observed that Dr. Hughes did not begin treating plaintiff until June 2002 (A.R. 24), months after plaintiff's disability insured status had expired. Plaintiff's argument does nothing to undermine the ALJ's determination that plaintiff was not disabled on or before the March 31, 2002 expiration of her disability insured status.[3]

       The Sixth Circuit recognizes that subjective complaints may support a claim of disability. *See Buxton v. Halter*, 246 F.3d at 773; *Wyatt v. Secretary of Health & Human Servs.*, 974 F.2d 680, 686 (6th Cir. 1992). However, the determination of disability from subjective complaints is peculiarly within the province of the ALJ. *See, e.g.*, *Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge

---

[3] If plaintiff believes that her condition has deteriorated since the date of the ALJ's decision, she may be able to file a claim for SSI benefits "based on a different period of disability than the one considered here." *Jones v. Commissioner*, 336 F.3d at 478.

[her] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, [her] conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d at 531. "An individual's statements as to 'pain or other symptoms will not alone establish that [she is] disabled.'" *Id.* (quoting 20 C.F.R. § 404.1529(a)).

    Plaintiff's brief does not engage all plaintiff's daily activities identified by the ALJ as supporting her credibility determination, but instead attempts to isolate the ALJ's reference to plaintiff's motorcycle riding. Upon review, I find nothing improper in the ALJ's determination that plaintiff's motorcycle riding undercut her claims of totally disabling symptoms. During her hearing testimony plaintiff persisted in claiming total disability since her August 1996 automobile accident. (A.R. 586). The ALJ observed that plaintiff had reported to Dr. Forsythe in July of 1998 (A.R. 23, 337) that she enjoyed riding her Harley Davidson motorcycle. Obviously, plaintiff's 1998 statement could not establish that plaintiff continued to ride her motorcycle during the period from May 18, 1999 through March 31, 2002. However, plaintiff's motorcycle riding was inconsistent with plaintiff's claims that she had continuously experienced disabling symptoms since August of 1996, and the ALJ's determination that this activity undermined plaintiff's testimony concerning the persistence and intensity of her subjective symptoms was well within the ALJ's purview.

    Plaintiff takes issue with the portion of the ALJ's opinion stating: "The claimant testified that she was disabled, but when her attorney asked her if she could do work as a gate

attendant, she stated she could as long as she was able to recline during normal work breaks." (A.R. 23). Plaintiff makes a correct, but inconsequential observation that her attorney never asked her if she was capable of performing gate attendant work. The hearing transcript reveals a slightly different series of questions and answers. Plaintiff's attorney questioned plaintiff about the light housework she performed. Plaintiff testified that it took her all morning to perform light housework, that afterwards her shoulders ached, her muscles felt tense, and that to relieve this discomfort she would either lie in bed or sit in a recliner. (A.R. 595-96). After the VE had testified in response to the ALJ's hypothetical that a person of plaintiff's age, with her education, work experience, and RFC would be capable of performing work as a parking lot/gate attendant or electronic surveillance monitor, and that there were approximately 9000 such positions in Michigan's Lower Peninsula (A.R. 601), plaintiff's attorney began questioning the VE about the gate attendant jobs, and in particular, whether a significant need to recline for pain relief would preclude the gate attendant work:

> Q     If she had to recline on well either a chair or a bed, obviously a bed, no. But if she had to recline as indicated one hour a day, that would [be] whether she slept or not, would that preclude all gainful activity?
>
> A     If she has to recline more than what her normal work rates would allow on a regular basis, yes that would preclude that work.

(A.R. 603). The ALJ determined that plaintiff's claim of a need to lie down for pain relief was not credible. Although plaintiff identified a minor inaccuracy in the ALJ's opinion, the ALJ's credibility determination remains supported by more than substantial evidence.

        Finally, plaintiff argues that, "there is evidence that strongly supports claimant's complaint of intractable pain," referencing a statement plaintiff's attorney obtained on June 12, 2002, from plaintiff's family physician, Seth Egelston, D.O. (Plf. Brief at 5)(A.R. 548). This court does

not make its own credibility determinations. The issue is not whether evidence can be located in the record on which an ALJ might reasonably have based a decision finding that the plaintiff was disabled. *See Jones v. Commissioner*, 336 F.3d at 477. The issue before the court is whether the Commissioner's final administrative decision denying plaintiff's claim for DIB benefits for the closed period of May 18, 1999 through March 31, 2002 is supported by substantial evidence. I find that the Commissioner's decision easily passes review under this standard.

## Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:   August 7, 2006          /s/  Joseph G. Scoville
                                 United States Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).